IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **DAVID SCOTT KOVEN SR., and ROXANNE DIANE KOVEN,** | ) ) ) | |
| Plaintiffs, | ) ) | 8:10CV373 |
| V. | ) ) | |
| **TODD HAMMOND, Plattsmouth Police Officer, LEROY LEWIS, Plattsmouth Police Officer, DAVID MURDOCH, Plattsmouth Police Chief, ROBERT SORENSON, Plattsmouth Police Officer, ANDREW KENAN, Plattsmouth Police Detective, DAVID WALKER, Plattsmouth Police Detective, and CITY OF PLATTSMOUTH, The, Nebraska,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants. | | |

Plaintiff David Koven ("Mr. Koven") and his wife, Roxanne Koven ("Ms. Koven"), (collectively referred to herein as "Plaintiffs") filed this action against the City of Plattsmouth, Nebraska ("the City"), as well as several members of the City's police department in their individual capacities. (Filing 1.) Plaintiffs assert that the defendant officers illegally searched their home, unconstitutionally seized Mr. Koven and their children and conspired to violate Plaintiffs' constitutional rights. (Id.) Plaintiffs also claim that the City failed to train its police officers as to proper procedures for conducting criminal and mental health investigations. (Id.) Defendants have filed a Motion for Summary Judgment (filing 35), arguing that they are entitled to qualified immunity and, additionally, that Plaintiffs do not have any evidence to support several of their claims. For the reasons set forth below, Defendants' Motion will be granted, in part.[1]

---

[1]Plaintiffs did not file a response to Defendants' motion for summary judgment within the required time period. Pursuant to NECivR 56.1, the movant's statement of facts is

## BACKGROUND

On the evening of June 27, 2009, Mr. Koven was home alone with his two minor children, ages eight and three. (Filing 1.) Ms. Koven, who was deployed with the Army National Guard, contacted her neighbor, Cindy Burke ("Burke"), and requested that Burke check on her family. (Filing 44-2.) Rather than going to the Koven home, Burke contacted the police. According to Defendants, Burke informed them that Ms. Koven had advised her that Mr. Koven was suicidal. (Filing 37-6.) Ms. Koven denies telling Burke that Mr. Koven was suicidal. (Filing 44-2.) Plaintiffs also assert that Burke did not inform the police that Mr. Koven was suicidal.

Following receipt of Burke's call, Defendant police officers David Murdoch ("Murdoch"), Todd Hammond ("Hammond"), Leroy Lewis ("Lewis") and Robert Sorenson ("Sorenson") traveled to the Koven home. (Filing 37-4; Filing 37-5; Filing 37-6; Filing 37-7.) When the officers arrived,[2] they approached Mr. Koven outside his home and told him that they were there to conduct a health and welfare check. (*Id.*) The officers informed Mr. Koven that they had received a report that he was suicidal and that they needed to speak with him or they would have to take him into emergency protective custody. (*Id.*) Mr. Koven denied being suicidal or having threatened suicide and allowed the officers to see his children, who, upon examination, appeared to be fine. (*Id.*)

The events that next took place at the Koven home are widely disputed. Defendants insist that Mr. Koven was extremely agitated and refused to cooperate. (Filing 37-4; Filing 37-5; Filing 37-6; Filing 37-7.) Mr. Koven, on the other hand, contends that he complied with the officers' requests, as evidenced by his presentation of his children to the officers.

---

deemed admitted unless controverted by the opposing party's response. Despite Plaintiffs' tardy response, in the interests of justice, the court will not deem Defendants' statement of facts to be admitted by Plaintiffs.

[2] The parties appear to dispute when Murdoch arrived on the scene. Mr. Koven claims that Murdoch did not arrive until after the other three officers had spoken to him and he had presented his children to those officers. (Filing 44-3.)

(Filing 44-3.) Mr. Koven maintains that Hammond, Lewis and Sorenson were about to leave without incident,[3] when Murdoch arrived on the scene. (*Id.*) Mr. Koven asserts that when he refused to speak directly to Murdoch, purportedly on account of a previous, unpleasant encounter with him, Murdoch became upset and ordered the other officers to place him in custody. (*Id.*)

Sorensen transported Mr. Koven to the Lasting Hope mental health facility in Omaha, Nebraska. (Filing 37-7.) When Sorensen arrived with Mr. Koven at Lasting Hope, he filled out a form entitled "Emergency Admittance Pursuant to Certificate of a Peace Officer." (Filing 44-7.) On the form, for the behavior that indicated that Mr. Koven was mentally ill, Sorensen wrote: "Wife is on military leave. [Mr. Koven] told wife he is suicidal and he will harm himself or others. [Mr. Koven] is very uncooperative and aggressive. [Mr. Koven] did not want to talk to police." (*Id.*) In the space on the form where Sorensen was to specify the behavior that indicated that Mr. Koven was dangerous, he wrote: "[Mr. Koven] advised it will only get worse and he will ruin Officer Sorensen's life. Told wife he is suicidal." (*Id.*) Mr. Koven was involuntarily admitted to Lasting Hope for seventeen days.

After Mr. Koven was taken into custody, Lewis entered Plaintiffs' house to supervise Plaintiffs' children until arrangements could be made to put them in foster care.[4] (Filing 37-5.) Lewis contends that he was directed by Plaintiffs' daughter, Kristin, to look in the basement laundry room for clean clothes for the children to take to foster care. (*Id.*) When Lewis got to the basement, he walked toward a room that appeared to be a bathroom. (*Id.*) Lewis maintains that when he got close to the bathroom, he could smell the odor of marijuana and he observed a High Times magazine and a marijuana grower's bible laying on the floor. (*Id.*) Lewis went into the bathroom and he saw what appeared to be marijuana twigs and three marijuana bongs. (*Id.*) Lewis then stepped out of the bathroom and entered

---

[3] Plaintiffs' daughter, Kristin, asserts that the officers asked her a few questions and then allowed her to return to the house. Kristin only recalls seeing three officers. (Filing 44-6.)

[4] According to Defendants, Murdoch ultimately took control of the Koven children. The children were taken to Lincoln, Nebraska and placed in foster care. (Filing 36.)

3

another room, which turned out to be the laundry room. (*Id.*) Lewis claims that as he was leaving the laundry room, he was met by Kristin. (*Id.*) As the two exited the room, Nathan, Plaintiffs' son, pointed toward a door leading into another room and stated that it was Mr. Koven's room. (*Id.*) Lewis maintains that Nathan opened the door and Kristin then shut it saying that they were not allowed to go in that room. (*Id.*) Officer Lewis re-opened the door and noticed a filtration system and a green light coming from another room inside the room. (*Id.*) Lewis stepped into the main room and found potted marijuana plants and what appeared to be a small marijuana growing operation. (*Id.*) Lewis did not have a warrant to search the home. (*Id.*)

Kristin disputes Lewis' claim that he was looking for clothes in the basement. (Filing 44-6.) According to Kristin, Lewis had already observed her pack clothes. (*Id.*) Kristin claims that she saw Lewis going through the basement cabinets with a flashlight and using her dad's keys to unlock doors, including the door to the room where the marijuana plants were found. (*Id.*)

Lewis informed Murdoch of what he found in the basement. (Filing 37-5.) Murdoch then told Lewis to summon Defendants Andrew Kennan ("Kennan") and David Walker ("Walker"), who are detectives with the police department. Kennan and Walker arrived on the scene and conducted a warrantless search of the premises. (Filing 36 at CM/ECF p. 6.) According to Kennan, he contacted Ms. Koven by telephone on the evening of June 27, 2009, to seek permission to search the home. Kennan claims he was unable to reach her. (Filing 37-8.) Ms. Koven insists, however, that she spoke to an unidentified officer that evening who asked her whether she wanted police to kick in the door of the home. (Filing 44-2.) Ms. Koven asserts that she told the officer not to break down the door. (*Id.*) She claims that the officer never inquired as to whether Mr. Koven was suicidal and that she did not inform the officer that Mr. Koven had threatened suicide. (*Id.*)

On June 28, 2009, Ms. Koven spoke to Kennan by telephone. (Filing 37-8.) Kennan asserts that during this telephone conversation, Ms. Koven confirmed that Mr. Koven had said he was suicidal and that he had threatened to kill himself and the children. (*Id.*) Ms. Koven denies making this statement. (Filing 44-2.) When Ms. Koven refused to consent to

4

a search of the home, Kennan drafted an application for a search warrant, which was signed. (Filing 37-8.) On June 28, 2009, police officers, including Kennan and Walker, searched the Koven home, finding marijuana and other items apparently used to grow marijuana. (*Id.*)

Mr. Koven was charged by the State of Nebraska with manufacture of a controlled substance. The charges were dismissed, however, after the District Court of Cass County, Nebraska suppressed the evidence found in the Koven home, finding that police did not have a sufficient basis to place Mr. Koven in emergency protective custody and that the search of the Koven home was unlawful. (Filing 44-8.)

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially, the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## ANALYSIS

**1.     Counts I, II and III**

Plaintiffs allege that Defendants violated 42 U.S.C. § 1983 by illegally searching their

5

home (Count I), unconstitutionally seizing their children (Count II), and unconstitutionally seizing and confining Mr. Koven (Count III). Defendants argue that they are entitled to qualified immunity on each of these Counts and, accordingly, have moved for summary judgment.

"Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996). "Stated another way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information that the defendant possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (internal quotations and citation omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id*. (quotation and citation omitted).

To withstand a motion for summary judgment on qualified immunity grounds, the plaintiff must have "(1) assert[ed] a violation of a constitutional right; (2) demonstrate[d] that the alleged right is clearly established; and (3) raise[d] a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated [the] plaintiff's clearly established right." *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996), *cert. denied,* 519 U.S. 1011, 117 S.Ct. 518, 136 L.Ed.2d 407 (1996)). The nonmoving party is given the benefit of all relevant inferences at the summary judgment stage. *Smithson*, 235 F.3d at 1061. If a "genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground." *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000).

    **A.    Placement of Mr. Koven in Emergency Protective Custody (Count III) and Placement of Plaintiffs' Children in Foster Care (Count II)**

Mr. Koven complains that his Fourth Amendment rights were violated when he was

6

taken into emergency protective custody without probable cause (Count III).[5] Neb. Rev. Stat. § 71-919 authorizes law enforcement officers to take an individual into emergency protective custody if the officers have probable cause to believe that the person is mentally ill and dangerous. Nebraska law defines "mentally ill and dangerous" to include a person who is mentally ill[6] or substance dependent and, because of such mental illness of substance dependence, presents:

> (1) A substantial risk of serious harm to another person or persons within the near future as manifested by evidence of recent violent acts or threats of violence or by placing others in reasonable fear of such harm; or
>
> (2) A substantial risk of serious harm to himself or herself within the near future as manifested by evidence of recent attempts at, or threats of, suicide or serious bodily harm or evidence of inability to provide for his or her basic human needs . . .

Neb. Rev. Stat. § 71-908.

The parties have presented two vastly different stories about the circumstances underlying Mr. Koven's placement in protective custody. But, viewing the facts in a light most favorable to Plaintiffs for purposes of this qualified immunity analysis, it could be concluded that Mr. Koven suffered a constitutional violation by being taken into custody without probable cause. Plaintiffs maintain that Ms. Koven did not inform Burke or the police that Mr. Koven was suicidal. Plaintiffs also dispute that Burke informed the police that Mr. Koven was suicidal. However, even assuming that the police received such

---

[5] Plaintiffs' Complaint does not specifically state which defendants Count III is asserted against. However, to the extent, if any, that Count III it meant to apply to Kennan and Walker, it is dismissed as to these two defendants. It is apparent from the facts that these defendants had no involvement with Mr. Koven's placement into custody.

[6] Neb. Rev. Stat. § 71-907 defines "mentally ill" as having "a psychiatric disorder that involves a severe or substantial impairment of a person's thought processes, sensory input, mood balance, memory, or ability to reason which substantially interferes with such person's ability to meet the ordinary demands of living or interferes with the safety or well-being of others.

7

information, the observations police made while at the Koven residence may have dispelled their concerns. Mr. Koven denied any thoughts or threats of suicide. He allowed the officers to see his children who, upon inspection, appeared to be safe. There were no weapons or other preparations for a suicide attempt evident. Defendants argue that Mr. Koven was uncooperative and became belligerent. This assertion is disputed by Plaintiffs and there is evidence which indicates that Mr. Koven was, at least initially, cooperative.

A case presenting facts similar to those here is *Bailey v. Kennedy*, 349 F.3d 731 (4th Cir. 2003), a case in which the Fourth Circuit Court of Appeals affirmed the lower court's denial of qualified immunity for a Fourth Amendment unlawful seizure claim. In *Bailey*, a neighbor called 911, reporting to police that Michael Bailey had told her that he was going to commit suicide. When police arrived at Bailey's home, Bailey denied any thoughts of suicide and declined the officer's request to search the rest of his house. The officer observed no weapons or any other preparations for a suicide attempt. Bailey asked the officer to leave, escorted him out of the house and closed the front door. At this point, another officer arrived on the scene and knocked on the door. When Bailey answered the door, a scuffle took place between Bailey and the second officer and Bailey was placed in emergency custody.

The officers in *Bailey* argued that they had probable cause to seize Bailey for an emergency mental evaluation based on the neighbor's 911 report. The Fourth Circuit Court of Appeals disagreed, stating "[w]ithout more, the 911 report cannot bear the weight that the officers would place on it. The law does not permit random or baseless detention of citizens for psychological evaluations." *Id*. at 740 (internal quotation and citation omitted). As in *Bailey*, Burke's alleged statement could be deemed insufficient to establish probable cause to place Mr. Koven in emergency protective custody, particularly if there was no other indication that Mr. Koven was a threat to himself or others. A genuine issue of fact remains as to whether other circumstances existed which justified the officers' actions.

The necessity of having probable cause before placing someone in emergency protective custody was clearly established at the time of the events giving rise to this dispute. Courts have recognized that "the general right to be free from seizure unless probable cause

exists [is] clearly established in the mental health seizure context." *Gooden v. Howard County*, 954 F.2d 960, 968 (4th Cir. 1992). Also, more particularly, in *Bailey*, the Fourth Circuit Court of Appeals found that "it was clearly established that a police officer may not detain someone for an emergency mental evaluation based only on a 911 report that the person was suicidal, where the officers were able to observe the person alleged to be suicidal and observed nothing indicating that the person might have been a danger to himself." *Bailey*, 349 F.3d at 741. Plaintiffs have alleged the violation of a clearly established constitutional right.

Plaintiffs have raised a genuine issue of fact as to whether the officers would have known that their alleged conduct violated Mr. Koven's clearly established rights. The facts in this case are widely disputed. Plaintiffs deny that any reports of suicide threats were made to police. Absent from the record is any statement by Burke regarding what she was allegedly told by Ms. Koven and what Burke purportedly reported to police. The officers contend that Mr. Koven was acting erratically and was out of control, but this allegation is disputed by Mr. Koven. At this point, given the factual discrepancies, the court is unable to conclude that the officers acted reasonably under the circumstances. Accordingly, summary judgment on the basis of qualified immunity will be denied as to this claim.

Count II alleges that Murdoch and Lewis violated Plaintiffs' due process rights when they placed the Koven children in foster care. The Eighth Circuit has long recognized the liberty interest that parents hold in their family relationships as an important substantive due process right. *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005). However, given that Mr. Koven was no longer able to care for his children after he was placed in custody, setting aside the question of whether it was proper to take Mr. Koven into custody, Murdoch and Lewis acted reasonably in taking control of the Kovens' minor children. Therefore, qualified immunity will be granted as to Count II.

  **B.**  **Search of Plaintiffs' Home (Count I)**

Plaintiffs allege that Lewis, Kennan and Walker violated their Fourth Amendment rights by unlawfully searching their home without a warrant. Plaintiffs contend that Lewis

9

was not looking for clothes while in the basement. Plaintiffs' daughter claims that she had already packed clothes and that she observed Lewis in the basement looking through cabinets and using Mr. Koven's keys to unlock doors. Lewis' own affidavit indicates that he may have done more than look for clothes while in the basement. According to Lewis, when he entered the basement, be observed what appeared to be a bathroom and entered. There, he discovered drug paraphernalia and burnt marijuana residue. After finding the laundry room, Lewis opened the door of another basement room that the children told him not to enter. While in that room, he uncovered potted marijuana plants. Later that evening, the home was searched by Kennan and Walker without a warrant.

It is well-settled that the Fourth Amendment requires that a warrantless search of the home be supported by consent or by probable cause and exigent circumstances. *United States v. Poe*, 462 F.3d 997, 999 (8th Cir. 2006). Viewing the facts most favorably to Plaintiffs, it could be found that no probable cause or exigent circumstances existed to search Plaintiffs' home without a warrant and that the officers acted unreasonably in doing so. Mr. Koven had been removed from the premises and there was no threat that evidence would be destroyed before a warrant could be obtained. Summary judgment will be denied as to this Count.

**2.     Conspiracy Claim (Count IV)**

Plaintiffs allege that Hammond, Lewis, Murdoch, Sorenson, Kennan and Walker conspired to violate their rights under the Fourth, Fifth and Fourteenth Amendments. "It is well settled that a conspiracy claim must be plead with sufficient specificity and factual support to suggest a mutual understanding between the defendants, or a meeting of the minds." *Waller v. Maples*, No. 1:11CV00053, 2011 WL 3861370, *5 (E.D. Ark. July 26, 2011) (internal quotation and citations omitted). Here, Plaintiffs' Complaint merely contains conclusory statements regarding the existence of a conspiracy and agreement between the Defendants. The Complaint contains no factual support to suggest that there was an actual understanding or plan between Defendants to violate Plaintiffs' constitutional rights. Moreover, Plaintiffs have not presented any evidence that there was such an agreement or plan. Although the officers were each involved in some portion of the events leading to this

lawsuit, this fact alone does not give rise to a claim for an unlawful civil conspiracy. *See Reasonover v. St. Louis County, Missouri*, 447 F.3d 569, 582 (8th Cir. 2006) (finding that officers' joint pursuit of their investigation of suspect did not constitute a conspiracy to violate the suspect's civil rights). Additionally, it appears as if Plaintiffs pose no objection to the dismissal of this cause of action. Their brief opposing Defendants' summary judgment motion contains no mention of their conspiracy claim. Summary judgment will be granted as to Count IV.

### 3. Policies and Practices Claim (Count V)

Plaintiffs allege that the City of Plattsmouth's policies, practices and customs caused the alleged violations of Plaintiffs' constitutional rights. Plaintiffs allege that:

> [T]he City of Plattsmouth does not provide adequate training on (a) the proper procedure and adequate grounds for placing a person in Plaintiff David Koven's position in Emergency Protective Custody, (b) the proper procedure and adequate grounds for involuntarily admitting a person into a locked mental health facility, (c) the proper procedure and adequate grounds for conducting a warrantless search of a person's home.

(Filing 1.) In order to succeed on this claim, Plaintiffs must identify a governmental policy or custom that caused their injuries. *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007). "A governmental policy involves a deliberate choice to follow a course of action . . . made from among various alternatives by an official who has the final authority to establish governmental policy." *Id.* (internal quotation and citation omitted). A governmental custom involves a "pattern of persistent and widespread . . . practices which [become] so permanent and well settled as to have the effect and force of law." *Id.* (internal quotation and citation omitted). Plaintiffs have not identified or presented any evidence of such a policy or custom. Also, like their conspiracy claim, Plaintiffs did not mention this cause of action in their responsive brief. In the absence of evidence supporting Plaintiffs' polices and practices claim, the City is entitled to summary judgment.

Accordingly,

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (filing 35) is granted, in part.

2. Counts II, IV and V of the Complaint are dismissed with prejudice. The City of Plattsmouth is dismissed from this action.

3. In all other respects, Defendants' Motion for Summary Judgment is denied.

4. A telephonic status conference will be held with the undersigned on April 30, 2012, at 10:30 a.m. for purposes of reviewing progression of this case. Plaintiffs' counsel shall initiate the call to chambers. The parties shall confer, in advance of the conference, in an effort to arrive at agreeable dates/deadlines for case progression.

**DATED April 6, 2012.**

                                        **BY THE COURT:**

                                        **S/ F.A. Gossett**
                                        **United States Magistrate Judge**