## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **DAVID SCOTT KOVEN SR., and ROXANNE DIANE KOVEN,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **8:10CV373** |
| **V.** | ) ) | |
| **LEROY LEWIS, Plattsmouth Police Officer, and DAVID MURDOCH, Plattsmouth Police Chief,** | ) ) ) ) | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| **Defendants.** | ) ) ) | |

This matter is before the Court following a non-jury trial held on November 5 and 6, 2013. Pursuant to Fed. R. Civ. P. 52, the Court makes the following findings of fact and conclusions of law.

## BACKGROUND

Plaintiff David Koven ("Mr. Koven") and his wife, Roxanne Koven ("Ms. Koven") (collectively referred to herein as "Plaintiffs"), filed this action against the City of Plattsmouth, Nebraska ("the City"), as well as several members of the City's police department in their individual capacities. (Filing 1.) These officers included Todd Hammond ("Hammond"), Leroy Lewis ("Lewis"), David Murdoch ("Murdoch"), Robert Sorenson ("Sorenson"), Andrew Kennan ("Kennan") and David Walker ("Walker"). Plaintiffs alleged that Defendants were liable under 42 U.S.C. § 1983 for violating their constitutional rights. In particular, Plaintiffs asserted that the defendant officers illegally searched their home ("Count I"), unconstitutionally seized their children ("Count II"), unconstitutionally seized Mr. Koven ("Count III") and conspired to violate Plaintiffs' constitutional rights. ("Count IV"). Plaintiffs also maintained that the City's policies, practices, and customs caused the alleged violations of their constitutional rights ("Count V").

On April 6, 2012, the Court granted, in part, a motion for summary judgment filed by Defendants.  (Filing 45.)  The Court dismissed Counts II, IV, and V of the Complaint with prejudice, and dismissed the City of Plattsmouth from the suit.  The Court also dismissed Count III as it pertained to Defendants Walker and Kennan.  The Court found genuine issues of fact remained as to Counts I and III which precluded the entry of summary judgment as to those claims at that time.

Trial in this matter commenced on November 5, 2013, with Plaintiffs proceeding *pro se*.  At the close of Plaintiffs' evidence, Defendants moved to dismiss Plaintiffs' claims, arguing that Plaintiffs failed to met their initial burdens of proof.  The Court granted Defendants' motion, in part, dismissing Defendants Hammond, Sorenson, Kennan and Walker from the suit.  The Court concluded that Plaintiffs had failed to establish a prima facie case as to those Defendants.  The Court found, however, that Plaintiffs had established a prima facie case on Count I as to Lewis, and on Court III as to Murdoch.  Accordingly, Lewis and Murdoch are the only Defendants remaining in this suit.

## FINDINGS OF FACT

Having considered the evidence presented, and taking into account the credibility of all witness testimony and the weight to be given to that testimony, the Court makes the following findings of fact:

1.      On the evening of June 27, 2009, Mr. Koven was home alone with his two minor children, ages eight and three.  Ms. Koven, who was deployed out of state with the Army National Guard, had been out drinking that evening and had made numerous attempts to contact Mr. Koven by telephone, but had been unable to reach him.  Consequently, Ms. Koven contacted her neighbor, Cindy Burke ("Burke"), and requested that Burke check on her family.  Burke testified that Ms. Koven told her over the phone that Mr. Koven was suicidal.  Ms. Koven testified that she contacted Burke because she was worried about her husband, but that she does not recall telling Burke that Mr. Koven was suicidal.  Ms. Koven admitted, however, that she was aware of a past suicide attempt by her husband at the time she contacted Burke.

2.      Rather than going to the Koven home, Burke contacted police. Burke informed the police that Ms. Koven had advised her that Mr. Koven was suicidal.

3.      Following receipt of Burke's call, police officers Murdoch, Hammond, Lewis and Sorenson traveled to the Koven home.  When the officers arrived, they approached Mr. Koven outside his home and told him that they were there to conduct a health and welfare check.  The officers informed Mr. Koven that they received a report that he was  suicidal and that they needed to speak with him or they would have to take him into emergency protective custody ("EPC").  Mr. Koven denied being suicidal or having threatened suicide and allowed the officers to see his children, who, upon examination, appeared to be fine.  Mr. Koven testified that at the time the officers arrived, they seemed very concerned about the situation.

4.      Mr. Koven refused to answer questions asked by Murdoch, the officer in charge. Hammond testified that Mr. Koven was agitated, combative, belligerent, and refused to speak to the officers.  Likewise, Sorenson testified that Mr. Koven was uncooperative and belligerent.  Lewis also testified that Mr. Koven was agitated and refused to answer basic questions.  Because Mr. Koven refused to answer questions and was uncooperative, Murdoch ordered the officers to place Mr. Koven into EPC.  Mr. Koven was then hand-cuffed and placed in the back of a police cruiser.  While in the cruiser, Mr. Koven kicked the passenger door, which resulted in damage to the vehicle's window.

5.      Mr. Koven testified that he was cooperative with the officers, but he acknowledged that he told Murdoch he did not want to speak to him and told Murdoch to leave.  Mr. Koven further testified that he did not know what Murdoch meant by "EPC." He stated that he had known what that meant, he probably would have slammed the door to his home and made the officers kick the door down.

6.      After Mr. Koven was taken into custody, Sorenson transported him to the Lasting Hope mental health facility in Omaha, Nebraska.  Mr. Koven stayed at Lasting Hope for approximately two weeks.

7.      With Mr. Koven in custody, Lewis entered Plaintiffs' house to supervise Plaintiffs' children until arrangements could be made to put them in foster care.  After being

3

in the home for a couple hours, Lewis went downstairs to the basement to look for clean clothes for the children to take to foster care.

8.     Lewis could smell the odor of marijuana as he entered the basement. When he got downstairs, he walked toward a room that appeared to be a bathroom. Lewis went into the bathroom and he saw what appeared to be marijuana twigs and marijuana bongs. Lewis was then met by Plaintiffs' daughter, Kristin, who pointed Lewis toward the laundry room. As he was leaving the laundry room, Nathan, Plaintiffs' son, pointed toward a closed door in the basement and stated that it was Daddy's room. Nathan opened the door, but Kristin shut it. Lewis testified at trial that his "professional curiosity" got the better of him, and that he re-opened the door and took three steps inside the room. Lewis noticed a filtration system and a green light while in the room. Lewis also observed potted marijuana stems. Lewis concluded that he had found a small marijuana growing operation and exited the room. Lewis informed Murdoch of what he found in the basement. Lewis did not have a warrant to search the home.

9.     On June 28, 2009, Ms. Koven spoke to Kennan, a detective with the police department, by telephone. Ms. Koven refused to consent to a search of the home.

10.     Mr. Koven was later charged by the State of Nebraska with manufacture of a controlled substance, but the charges were dismissed following a suppression hearing.

11.     The Court finds that the witness testimony of Burke, Hammond, Lewis, Murdoch, Sorenson, Kennan and Walker is credible and supported by the evidence. The officers' testimony was clear and their demeanor was professional. The Court finds the testimony of Mr. and Ms. Koven and Kristin Koven less than credible to the extent their testimony is primarily self-serving and inconsistent with the other evidence of record.

## CONCLUSIONS OF LAW

### A.     Placement of Mr. Koven in Emergency Protective Custody (Count III)

Mr. Koven contends that his Fourth Amendment rights were violated when he was

placed in emergency protective custody. A law enforcement officer is authorized under Nebraska law to take an individual into emergency protective custody if the officer has probable cause to believe that the person is mentally ill and dangerous. Neb. Rev. Stat. § 71-919. Nebraska law defines "mentally ill and dangerous" to include a person who is mentally ill or substance dependent and, because of such mental illness or substance dependence, presents:

> (1) A substantial risk of serious harm to another person or persons within the near future as manifested by evidence of recent violent acts or threats of violence or by placing others in reasonable fear of such harm; or

> (2) A substantial risk of serious harm to himself or herself within the near future as manifested by evidence of recent attempts at, or threats of, suicide or serious bodily harm or evidence of inability to provide for his or her basic human needs . . .

Neb. Rev. Stat. § 71-908.

The Court finds that the officers had probable cause to place Mr. Koven in emergency protective custody. Mr. Koven admittedly refused to speak to Murdoch, the officer in charge. Additionally, several of the other officers on the scene testified that Mr. Koven was uncooperative and combative. The Court finds the officers' testimony as to Mr. Koven's behavior during the encounter credible and supported by the evidence. Moreover, Mr. Koven himself testified that he would have resisted the officers' attempts to place him into emergency protective custody. Mr. Koven's erratic behavior is further evidenced by his behavior in the police cruiser. The Court finds no constitutional violation under the circumstances of this case. Plaintiffs' Complaint will be dismissed with prejudice as to Murdoch.

Moreover, even if Plaintiffs could establish that Murdoch did not have probable cause to take Mr. Koven into custody, Murdoch would nevertheless be entitled to qualified immunity. "Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996). "Stated another

5

way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information that the defendant possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (internal quotations and citation omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotation and citation omitted).

The police received a report that Mr. Koven was suicidal. Mr. Koven was uncooperative and refused to answer questions. Knowing that Mr. Koven had small children in the house, and given Mr. Koven's behavior and the information received from Burke, the Court is unable to conclude that Murdoch acted unreasonably in removing the children from Mr. Koven's care and taking Mr. Koven into custody.

### B.    Search of Plaintiffs' Home (Count I)

Plaintiffs also allege a deprivation of their right to be free from unreasonable search and seizure. "The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." *True v. Nebraska*, 612 F.3d 676, 680 (8th Cir. 2010) (internal quotation and citation omitted). "The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government, without regard to whether the government actor is investigating crime or performing another function." *Id.* (quotation and citation omitted).

"The Fourth Amendment prohibits a warrantless entry of a home by law enforcement officers unless the circumstances are within a reasonableness exception to the warrant requirement." *United States v. Clarke*, 564 F.3d 949, 958-59 (8th Cir. 2009). The Eighth Circuit has recognized a "reasonableness exception to the warrant requirement which allows a non-consensual, warrantless search of a home if the search is supported by probable cause and exigent circumstances." *Id.* "Exigent circumstances exist if an objectively reasonable officer on the scene would have sufficient grounds to believe an exigency existed." *United States v. Poe*, 462 F.3d 997, 1000 (8th Cir. 2006). "Exigent circumstances include threats to an individual's life, a suspect's imminent escape, the imminent destruction of evidence,

or situations where there is a compelling need for official action and there is no time to secure a warrant." *Smith v. Kansas City, Mo. Police Dep't*, 586 F.3d 576, 580 (8th Cir. 2009) (internal quotation and citation omitted).

There has not been a demonstration of exigency in this case.  Although the odor of marijuana was present in the basement, and Lewis viewed other drug-related items in plain-view while downstairs, there was no reason for Lewis to open the door to Mr. Koven's room. There was no exigent circumstances present which made a warrantless search necessary at that point.  Mr. Koven had been removed from the home and the only occupants remaining in the residence were the Koven children.  There was no threat that evidence would be destroyed.  In fact, Lewis had been in the Koven home for several hours prior to venturing into the basement.   Lewis admits that he opened the door to the room because his professional curiosity got the best of him.  The Court finds that Plaintiffs' constitutional rights were violated by Lewis' warrantless search of their home.

Lewis is not entitled to qualified immunity on Plaintiffs' unlawful search claim. It is well-settled that the Fourth Amendment requires that a warrantless search of the home be supported by consent or by probable cause and exigent circumstances.  *Poe*, 462 F.3d at 999. A reasonable officer would have known that searching the home under the circumstances violated a clearly established right.  Lewis had no reason to believe his conduct was lawful in light of this clearly established law and the information then in his possession.  In short, Lewis' behavior was not objectively reasonable in light of the clearly established law at the time.  Therefore, judgment will be entered in favor of Plaintiffs and against Lewis on the unlawful search claim.

## C.    Damages

As stated above, the Kovens' Fourth Amendment rights were violated by Lewis' warrantless search of their home.  However, Plaintiffs have failed to show that they sustained any actual damages as a result of Lewis' search.

The purpose of § 1983 damages is "to compensate persons for injuries that are caused by the deprivation of constitutional rights."  *Memphis Community School Dist. v. Stachura,*

477 U.S. 299, 307 (1986) (quotation and citation omitted).  "[C]ompensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . . , personal humiliation, and mental anguish and suffering." *Id.* (internal quotation and citation omitted).  However, "[i]n order to recover substantial compensatory damages, actual injury must be demonstrated." *Reutcke v. Dahm*, 707 F. Supp. 1121, 1135 (D. Neb. 1988).  Additionally, compensatory damages "must be considered with reference to the nature of the interests protected by the particular constitutional right in question." *Carey v. Piphus*, 435 U.S. 247, 265 (1978).  In other words, recovery in the Fourth Amendment context is limited "to damages directly related to the invasion of privacy that the Fourth Amendment is intended to protect." *Padilla v. Miller*, 143 F. Supp.2d 479, 491 (M.D. Pa. 2001).

Plaintiffs have not demonstrated any actual damage which resulted from the search of their home.  Mr. Koven provided some conclusory testimony regarding emotional distress Plaintiffs and their children purportedly sustained as a result of their encounter with the Defendant police officers on June 27, 2009.  Mr. Koven also provided some ambiguous and unsubstantiated testimony about the impact the incident had on his ability to maintain a job and his reputation in the community.  This testimony is insufficient to establish actual injury. There was no credible testimony explaining the circumstances of these alleged injuries in reasonable detail.  There is no evidence that any mental distress or negative impact on Plaintiffs' reputations or employment prospects is actually attributable to the Fourth Amendment violation.  *See Carey*, 435 U.S. at 264 (stating that although mental and emotional distress caused by the violation of a federally-protected right is compensable under § 1983, "neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused").  Although criminal charges were levied against Mr. Koven as a result of the materials found during the search, victims of unreasonable searches or seizures "cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Townes v. City of New York*, 176 F.3d 138, 148 (3d Cir. 1999).

Nevertheless, if a plaintiff shows that his Fourth Amendment rights were violated through an illegal search of his home, he is entitled to nominal damages even if he cannot

prove actual damages. *Garrett v. Clarke*, 147 F.3d 745, 747 (8th Cir. 1998). *See also Westborough Mall, Inc. v. City of Cape Girardeau, Mo.*, 794 F.2d 330, 339 (8th Cir. 1986) ("A plaintiff whose constitutional rights have been violated is entitled to a finding of liability and nominal damages even if no compensatory damages are shown"). The Court will award Plaintiffs nominal damages in the amount of $1.00 for the unlawful search of their home.

There is no basis for an award of punitive damages in this case. "Punitive damages may be recovered in a § 1983 case when a defendant's conduct is shown to be motivated by malicious or evil motive or intent, or when it involves reckless or careless disregard or indifference" to the protected rights of others. *Estate of Davis by Ostenfeld v. Delo*, 115 F.3d 1388, 1396 (8th Cir. 1997) (citation omitted). Punitive damages may even be awarded when only nominal damages are shown. *See Goodwin v. Circuit Court of St. Louis County, Mo.*, 729 F.2d 541, 548 (8th Cir. 1984) ("As to the claim that punitive damages may not be awarded unless actual damages are proved, this is not the law"). Having considered the matter, the Court finds that there is no evidence that Lewis' entry into the basement and search of the home was motivated by an evil intent or taken in reckless disregard of Plaintiffs' federally protected rights.

Accordingly,

**IT IS ORDERED:**

1.   Judgment shall be entered by separate document in favor of Plaintiffs, and against Defendant Leroy Lewis in the amount of $1.00, plus taxable court costs.

2.   Plaintiffs' claim against Defendant David Murdoch is dismissed with prejudice.

**DATED January 9, 2014.**

**BY THE COURT:**

**S/ F.A. Gossett**
**United States Magistrate Judge**